211 So.2d 465

**H. G. BRADLEY**

v.

**Louie L. JONES.**

**3 Div. 300.**

Supreme Court of Alabama.

June 6, 1968.

Hobbs, Copeland, Franco, Riggs & Screws, Montgomery, for appellant.

Goodwyn, Smith & Bowman, Montgomery, for appellee.

MERRILL, Justice.

Appellee sued appellant on two contracts and the jury verdict was in favor of appellee in the amount of $15,054. A motion for a new trial was overruled and this appeal followed.

Appellee was a subcontractor employed to do street grading work in two different subdivisions by appellant who was a general contractor for subdivision layouts including roads, sewers, water pipes, etc. The agreement between the parties was verbal on each of the two jobs. The dispute arose out of precisely what items of work were, or were meant to be, included in the terms of the agreement, and whether or not the work was performed satisfactorily. Most of the conflict arises as to how much work appellee did was under the original verbal contracts and how much was for "street excavation" and how much was for "extra" work for which an additional charge could legitimately be made. Appellee contended that it was "extra" work when his men graded curbs and gutters, backfilled spaces between streets and sidewalks, graded the sidewalk area, regraded the streets after pipes were laid and removed extraneous dirt after these operations.

Appellee's complaint was in two counts: He claimed $8,269.55 due on the Carol Villa Subdivision and $8,773.44 on the Spring Valley Subdivision. Appellant pleaded recoupment to both counts, showing a smaller amount due on each.

The main question is whether it was reversible error in this case for the one verdict of $15,054 to be allowed to stand when it was in excess of either of the amounts sued for in each separate cause of action, but was less than the combined amounts sued for in the two counts.

Fortunately, it is not necessary to decide the question to which most of the parties' briefs are devoted.

Under the pleadings, appellant admitted that he still owed appellee some money on each contract, but disputed the amounts claimed by appellee.

Concluding his charge to the jury, the trial judge stated:

"* * * There is only one possible verdict that you can return in this case, 'We, the jury, find for the plaintiff, and assess his damages at blank dollars,' because the defendant [admits] that he is indebted to the plaintiff, but disputes the amount that the plaintiff claims. Whatever verdict you render should be fair, just and impartial, and under the law it must be a unaminous verdict.

"Are you satisfied?

"MR. CROOK: Yes, sir.

"THE COURT: Are you satisfied?

"MR. COPELAND: The defendant is satisfied, Your Honor."

Certain it is that this was a waiver of any right to request separate verdicts.

The jury retired and later returned to the courtroom and the following took place:

"THE COURT: Where did you all write the verdict? The form of your verdict is, 'We, the jury, find for the plaintiff and assess his damages at so much.' You all go back in there and assess his damages at what ever amount you all arrive at.

"MR. COPELAND: Your Honor, I waive any objection to the form of the verdict.

"THE COURT: Well, they got—I don't know exactly what it is.

"A JUROR: Judge, I did the best I could. I know it is not good enough.

"THE COURT: Well, if you will do this—'We, the jury, find for the plaintiff and assess his damages whatever amount you all arrive at.'

"(The jury retired)

———

"(The jury returned to the Court Room)

"THE COURT: Now, has the jury arrived at a verdict?

"A JUROR: We have.

"THE COURT: 'We, the jury, find for the plaintiff damages in the sum of $15,054.99.' duly signed by the foreman as such."

In Booth v. S. & H. Laboratories, 39 Ala. App. 615, 105 So.2d 879, Harwood, J., then Presiding Judge of the Court of Appeals, wrote:

"A verdict contrary to the law as contained in an instruction by the court will be set aside, whether the instruction be right or wrong. Due regard for the orderly administration of justice demands that a jury should obey the instructions of the trial court. Fleming & Hines v. Louisville & N. R. Co., 148 Ala. 527, 41 So. 683; Brettel v. Connelly, 157 Ala. 671, 47 So. 298; Talley v. Whitlock, 199 Ala. 28, 73 So. 976; Fulton v. McQuirter, 222 Ala. 660, 133 So. 703; McKenzie v. Magnolia Springs Land Co., 255 Ala. 335, 51 So.2d 359; New Hampshire Fire Ins. Co. v. Curtis, 264 Ala. 137, 85 So.2d 441."

In view of the court's instructions, the only possible form of verdict the jury could return was one in the form of the instant verdict.

■■ Raising the point for the first time on motion for a new trial was too late even if it had not been waived. Alleged error in the court's oral charge must be specifically pointed out by objections or exceptions to the oral charge so that the trial court may be given an opportunity to correct any errors that may have been committed. Scroggins v. Alabama Gas Corp.,

275 Ala. 650, 158 So.2d 90; Turner v. Mobile Infirmary Ass'n., 277 Ala. 15, 166 So. 2d 851.

■ Because of the express waiver of objections to the charge of the court as to the form of the verdict, we hold that any objections to the form of the verdict on motion for a new trial for the first time, or on appeal here, came too late.

■ Appellant argues that the verdict was not supported by the great weight of the evidence, one of his grounds in the motion for a new trial. The evidence was voluminous and partook of an accounting. We will not detail it, but state that the record does contain ample evidence which supports the verdict of the jury.

Finally, appellant argues that the court erred in permitting appellee to introduce into evidence the State of Alabama Specifications for Highway and Bridges, and in permitting the use of these specifications for cross examination of appellant's witnesses.

■ ■ The first reference to the State Highway Specification (the blue book) came when appellant was questioning his own witness, Douglas O. Sheehan, the project engineer for the Carol Villa Subdivision:

"Q Now, are there any governmental standards which must be met by the engineer in the preparation of plans and specifications for this type subdivision work?

"A You are referring to subdivisions built without the city limits?

"Q Yes, sir.

"A Yes. You have the county standards to go by, which are the same as the city standards.

"Q Now, are these streets built with reference to—you notice Mr. Jones is holding a blue book which I think is familiar to all engineers of the standard specifications published by the State Highway Department—those specifications have application to a county subdivision that is within the police jurisdiction?

"A To my knowledge they have no application to it."

It is obvious that appellee was entitled to cross examine the witness. We have said that while the facts elicited by a question propounded to a witness on cross examination may not have been admissible as independent evidence, the question was proper in explanation or rebuttal of statements made by the witness on direct examination. Middleton v. Western Union Telegraph Co., 197 Ala. 243, 72 So. 548. We think that rule is applicable here as to the cross examination of the witness Sheehan.

As to some of the contents of the blue book, it was appellant's position that the "extra" work was included in the term "street excavation." Appellee offered testimony of several contractors to show that the items which he claimed were "extra" are not normally included in a contract for "street excavation" only. To show that backfilling of curb and gutter is not customarily the responsibility of the "street excavation" contractor, appellee showed by his cross examination of the witness that under the State Specifications, such work was not the responsibility of the street excavation contractor. The evidence was not admitted generally but only on the issue of usage and custom among dirt moving contractors. This is shown by the following:

"Q I see. Mr. Sheehan, I am going to refer your attention, if I may, to a portion of the Alabama State Department Standard Specifications which you testified were well known among contractors.

"MR. COPELAND: Your Honor, at this point I would object. The evidence is undisputed that these specifications are not applicable to either job.

"MR. CROOK: May I be heard on this, Your Honor?

"THE COURT: All right.

"MR. CROOK: Judge, we do not contend that this job is governed necessarily by the State Highway specifications but a serious issue seems to have arisen in connection with what is the custom and useage, and what is understood by the members of the trade to be included in particular classifications. Now, we think that on the issue of the useage and general understanding and custom that the definitions by the State would have some bearing.

"THE COURT: I will let it come in on that.

"MR. COPELAND: We except.

"THE COURT: All right. That the jury can take into consideration that.

"MR. CROOK: We don't contend this is binding.

"THE COURT: All right."

In addition, appellee's witness, Assistant County Engineer J. O. Holliway, testified that the county adopts the State's specifications regarding construction of streets in subdivisions outside the city limits. It was undisputed that one of the projects on which appellee had worked for appellant was outside the city limits. At least the testimony was sufficiently relevant as to the rural project for us to say that the trial court did not abuse its discretion in ruling the evidence admissible.

The determination of whether or not particular evidence is relevant rests largely in the discretion of the trial court. Roan v. Smith, 272 Ala. 538, 133 So.2d 224; Occidental Life Ins. Co. of California v. Nichols, 266 Ala. 521, 97 So.2d 879.

Affirmed.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.