280 So.2d 755

**PONDEROSA ESTATES, INC.,**
a corporation

v.

**KUGLAR CONSTRUCTION CO.,**
a corporation

**6 Div. 878.**

Supreme Court of Alabama.

Sept. 21, 1972.

Rehearing Denied Jan. 4, 1973.

C. Stephen Trimmier, and Rives, Peterson, Pettus, Conway & Burge, Birmingham, and Frank Marsh, Bessemer, for appellant.

George Witcher, Birmingham, Brobston & Brobston, Bessemer, for appellee.

PER CURIAM.

On November 21, 1963, J. J. Collier and Johnny Kuglar entered into an agreement with Barto Brown and David W. Segars, Jr. whereby Collier and Kuglar agreed to purchase from Brown and Segars all of the capital stock of Ponderosa Estates, Inc. for $103,352.00. This amount was to be paid in three installments—$1,992.00 payable 90 days from the date of the agreement; $86,178.96 two years from the date of the agreement; and $15,181.04 due two years from the date of the agreement. The agreement provided that Collier and Kuglar would sign notes for these amounts, to bear interest at the rate of 6% from the date thereof.

The assets of the Ponderosa Estates, Inc. consisted of real estate. The liabilities of the corporation at the time of this agreement consisted of a note payable to the First National Bank of Birmingham in the amount of $86,178.96, and a note due Atlantic Coast Line Railroad in the amount of $117,500 secured by a mortgage on the real estate and state and county taxes.

Following the execution of the agreement Collier and Kuglar assumed the management of the Ponderosa Estates—Developing a subdivision.

On November 19, 1965 these individuals entered into an agreement which stated that Collier and Kuglar had failed to make payment as provided in the 1963 agreement, and that they desired a 15-day extension to midnight December 5, 1965, for the payment of the amounts provided for in the November, 1963 agreement. This extension agreement provided that upon failure of Collier and Kuglar to make payment on or before December 5, 1965, all stock and assets of Ponderosa Estates, Inc. would at midnight on that date revert back to Brown and Segars, and that Collier and Kuglar would on that date resign as officers and directors of the corporation, and that Segars and Brown would at such time assume management of the corporation.

Collier and Kuglar agreed to "make no contracts, debts, leases or conveyances oth-

er than in the regular course of business during the term of this extension, * * *."

After December 5, 1965, all stock in Ponderosa Estates, Inc. was surrendered to Segars and Brown, who assumed management of the corporation after that time.

Subsequently the agreements between these parties was the subject of a declaratory judgment action, which at the time of the trial in this case was pending before another judge in the court below. The issue in that case according to the record before us here was the amount due, if any, by Collier and Kuglar to Brown and Segars and vice versa.

The action before us was commenced as an action on a note wherein Kuglar Construction Company, a corporation, was plaintiff and Ponderosa Estates, Inc. was defendant. The complaint was amended to eliminate the count on the note and to substitute a count for account stated in the amount of $11,591.03. The case was tried to a jury which returned a verdict in favor of the plaintiff corporation in the amount sued for. The defendant corporation filed a motion for a new trial which was denied. It then appealed.

The only assignment of error complained of by the defendant corporation is the refusal of the trial court to allow it to put in evidence the agreement and extension to such agreement entered into between the four individuals, the gist of which has been set out above.

It is the contention of the defendant corporation that had the trial court allowed the extension agreement to be introduced in evidence, it would have tended to show that the individual authorizing the account between the plaintiff corporation and defendant corporation was without authority to do so. It takes this position because the extension agreement provides that the individuals who are referred to in that agreement as "parties of the first part" agreed

"to make no contracts, debts, leases or conveyances other than in the regular course of business during the term of this extension * * *."

Without going into the obvious question as to whether or not the quoted provision meant to prohibit the incurring of any indebtedness by the corporate defendant, which was not a party to the 15-day extension agreement, the evidence is undisputed that no indebtedness was in fact incurred by the corporate defendant during that 15-day period.

Mr. Collier, testifying on behalf of the plaintiff below, testified that in November of 1965 and December 6, 1965 (the extension agreement having been executed the 23rd of November, 1965 and running to midnight on December 5, 1965) "there wasn't any transactions at all went on from Ponderosa Estates [the defendant corporation]." This evidence was not disputed by the defendant.

Likewise, witness Hudson, who identified himself as a certified public accountant who had prepared the 1964 tax return for Ponderosa Estates, Inc., testified that the balance sheets of Ponderosa Estates, Inc. showed that Ponderosa Estates, Inc., was indebted to the plaintiff corporation, Kuglar Construction, in the amount of $11,591.03 as of December, 1964. Such amount was included by him in the tax return for that year. This evidence was not disputed.

This witness also testified that the books of Ponderosa Estates, Inc. were closed as of December 5, 1965, and at that time these books showed an amount due to Kuglar Construction Company in the amount of $11,591.03, but that such entries on the books did not mean that the indebtedness was incurred on that day but at various times during the year, or preceding year. This evidence was not disputed.

In addition to the above, the plaintiff corporation put in evidence cancelled

checks on the account of Kuglar Construction Company showing some $10,380.22 which Mr. Kuglar testified had been amounts of money expended by Kuglar Construction for which Ponderosa Estates, Inc. was indebted to it, and that these checks represented part of the account stated between defendant and plaintiff. These checks were all drawn prior to the date of the extension agreement which appellant says should have been allowed in evidence because it would have tended to show that the corporate defendant was prohibited by such agreement from incurring such debts.

What we have before us then is a contention by Ponderosa Estates, Inc. that the trial court should have allowed into evidence the agreement dated November 23, 1965 which restricted the authority of individuals not a party to this lawsuit from incurring certain debts. It does not deny the existence of the debt sued on nor does it refute the testimony adduced at the trial that such debt was incurred long prior to the date of the agreement which it sought to introduce. It does not deny that the books of the corporate defendant show the exact amount sued on as being due as early as the December, 1964 tax return.

Under these facts, we must agree with the trial court that the agreement dated November 23, 1965 between four individuals is not relevant evidence in this lawsuit between two corporations on an account stated, the evidence being undisputed that such account was due the corporate plaintiff long before the agreement between the individuals was entered into. The issue being litigated here was whether the defendant owed the plaintiff any money by way of account stated between them. The agreement sought to be entered would not tend to prove or disprove that issue. Nor would the agreement purporting to prohibit the individuals to such agreement from entering into any contracts or contracting any debts tend to show that debts incurred by the corporate defendant prior to the execution of such agreement were unauthorized. We have frequently said that:

" 'No precise and universal test of relevancy is furnished by the law but the determination of whether particular evidence is relevant rests largely in the discretion of the court, * * *.' " Occidental Life Ins. Co. of California v. Nichols, 266 Ala. 521, 97 So.2d 879, quoting 31A C.J.S. Evidence § 158.

More succinctly, it was stated in Sorrell v. Scheuer, 209 Ala. 268, 96 So. 216:

"As a general rule, facts are deemed relevant which logically tend to prove or disprove the fact in issue, or which afford a reasonable inference or shed light upon the matter contested; and facts bearing so remotely upon or collaterally to the issue that they afford merely a conjectural inference concerning the facts in issue should not be admitted in evidence. * * *

"Whether evidence offered is too remote to be admissible is for the court, in the exercise of a sound discretion, and such ruling will not be revised on appeal unless it is plain that error was committed. * * *."

See also Alabama Music Co. v. Nelson, 282 Ala. 517, 213 So.2d 250; Bradley v. Jones, 282 Ala. 331, 211 So.2d 465; Roan v. Smith, 272 Ala. 538, 133 So.2d 224.

We do not find that abuse of discretion here. No other error having been argued, it follows that the judgment appealed from must be affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH, McCALL and SOMERVILLE, JJ., concur.